# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Hand and Nail Harmony, Inc.; Nail Alliance, LLC,

        Plaintiffs,

  vs.

Guangzhou Cocome Cosmetics, Co.;
Guangzhou Bluesky Chemical Technology Co, LTD,

        Defendants.

Case No.: 2:15-cv-1191-GMN-PAL

**SEALED ORDER**

Pending before the Court are the Amended Motion for a Temporary Restraining Order ("TRO"), (ECF No. 10), Amended Motion for an Order to Show Cause Why a Preliminary Injunction Should Not Issue, (ECF No. 11), Amended Motion for Substitute Custodian Order, (ECF No. 12), Amended Motion for Alternate Service, (ECF No. 14), and Amended Motion to Seal, (ECF No. 15), filed by Plaintiffs Hand and Nail Harmony, Inc. and Nail Alliance, LLC. An *ex parte* hearing was held regarding the Amended Motion for a TRO on July 10, 2015, which concluded with the Court taking the issue under advisement. (ECF No. 23).  For the reasons set forth below, the Court will grant these Motions.[1]

///

///

---

[1] Also before the Court is Plaintiffs' Motion to Amend the Complaint, in order to name Guangzhou I.C.E. Cosmetic Co., Ltd. as an additional Defendant. (ECF No. 27).  Federal Rule of Civil Procedure 15(a)(1) permits a party to amend its pleading as a matter of course at any time prior to 21 days after the date of service. Therefore, the Court finds good cause to grant this Motion.

## I. BACKGROUND

This case centers upon allegations that Defendants have violated Plaintiffs' trademarks and sold counterfeit goods in violation of several provisions of the Lanham Act. (Compl., ECF No. 1).  Plaintiffs purport to own marks used in connection with Gelish nail polishes and 18G nail polish curing lamps. (*Id.* ¶¶ 15, 27).  In their Complaint, Plaintiffs allege that Defendants have promoted, distributed, and sold infringing merchandise at trade shows throughout the world. (*Id.* ¶ 42).  Plaintiffs claim that Defendants intend to sell counterfeit merchandise at the upcoming Cosmoprof Convention, which is set to take place in Las Vegas, Nevada on July 12-14, 2015. (*Id.* ¶ 48).  Plaintiffs have presented evidence showing that Defendant Guangzhou I.C.E. Cosmetic Co., Ltd. has sent at least two emails advertising counterfeit products to its distributors since June 16, 2015. (July 3, 2015 Email, Ex. 1 to Decl. of Steve Malynn, ECF No. 26); (June 16, 2015 Email, Ex. 1 to Notice of Errata to Affidavit of Steve Malynn, ECF No. 25).

The Court previously denied Plaintiffs' original Motion for a TRO, (ECF No. 3), after finding that Plaintiffs failed to sufficiently show a likelihood of irreparable harm in accordance with the standard set forth in *Herb Reed Enterprises, LLC v. Florida Entertainment Management., Inc.*, 736 F.3d 1239 (9th Cir. 2013) *cert. denied*, 135 S. Ct. 57 (2014).  In their Amended Motion for a TRO, Plaintiffs request that the Court issue an order preventing Defendants from, *inter alia*, advertising or selling products bearing Plaintiffs' marks or other marks that are confusingly similar thereto. (Am. Mot. for TRO, ECF No. 10).  Plaintiffs also request that the Court order the seizure of all counterfeit products or products bearing marks that are substantially indistinguishable from Plaintiffs' marks.

## II. LEGAL STANDARD

"The underlying purpose of a TRO is to preserve the status quo and prevent irreparable harm before a preliminary injunction hearing may be held." *Jones v. H.S.B.C. (USA)*, 844 F. Supp. 2d 1099, 1100 (S.D. Cal. 2012) (citing *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974)). "Temporary restraining orders are governed by the same standard applicable to preliminary injunctions." *Quiroga v. Chen*, 735 F. Supp. 2d 1226, 1228 (D. Nev. 2010).

A temporary restraining order may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of hardships tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. The Ninth Circuit has held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

## III. DISCUSSION

After reviewing the instant Motion, the Court finds that Plaintiffs have sufficiently shown: (1) that they are likely to succeed on the merits of their claim for trademark infringement; (2) that irreparable harm is likely in the absence of preliminary relief; (3) that the balance of hardships tips sharply in Plaintiffs' favor; and (4) that the public interest favors the issuance of a TRO. The Court will assess each of these elements in turn.

**(A)** **<u>Likelihood of Success</u>**

To succeed on a claim of trademark infringement, "a plaintiff must prove (1) the existence of a trademark and (2) the subsequent use of that mark by another in a manner likely to create consumer confusion." *Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 594 (9th Cir. 2000).

In this case, the evidence on the record demonstrates that Plaintiffs are the owners of the trademarks identified by United States Trademark Registration Numbers 4,096,115, 3,857,946, 4,473,557, 4,473,558, and 4,206,100, which include: a standard character mark for GELISH as used in nail care preparations; a design which incorporates the word GELISH with a specific wavy-line pattern; two three-dimensional designs associated with nail-care packaging; and a standard character mark for 18G as associated with an apparatus for drying nail finishes, polishes, and varnishes.

As to consumer confusion, Plaintiffs have provided numerous examples of reviews posted on various internet sites by consumers who are unable to discern the differences between actual Gelish products and products made by other manufacturers. *See, e.g.*, (July 2, 2013 Blog Post, Ex. 3 to Decl. of Steve Malynn, ECF No. 26) ("While being totally bummed out to find I had infiltrators among my legit Gelish collection, I was actually surprised that I'd never noticed anything different about these polishes. . . . With one I realized that the neck of the bottle, on the inside, had turned into a thick, jelly layer of polish that I had to pick out and throw away, I haven't seen this with my real Gelish polishes."). Furthermore, many consumers have expressed confusion regarding products manufactured by Defendants. *See, e.g.*, (June 16, 2012 Online Forum Post by User Sylkaai, Ex. 4 to Decl. of Steve Malynn, ECF No. 26) ("I

have a question on the internet you find fakes like gelish bluesky . . . what is the difference with the actual proper brands except the price and if they are dangerous what is in it that makes it dangerous? And how come they can put this on the market with the same name? Is there not a rule for these things? :sad:").

Accordingly, the Court finds that the evidence on the record demonstrates that Plaintiffs are likely to show that they own the trademarks at issue and that Defendants have used those marks in a manner that has created consumer confusion.

### (B) Likelihood of Irreparable Harm

In the Ninth Circuit, "actual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action." *Herb Reed*, 736 F.3d at 1249. "[T]he irreparable harm requirement for a permanent injunction in a trademark case applies with equal force in the preliminary injunction context." *Id.*; *see also Titaness Light Shop, LLC v. Sunlight Supply, Inc.*, No. 13-16959, 2014 WL 5017851, at *1 (9th Cir. Oct. 8, 2014) ("The fact that [the plaintiff's] reputation *might* be harmed by the marketing of [the defendant's] products did not establish that irreparable harm to [the plaintiff's] reputation is *likely*."). Accordingly, while "loss of control over business reputation and damage to goodwill could constitute irreparable harm," a court's finding of such harm cannot be "grounded in platitudes rather than evidence." *Herb Reed,* 736 F.3d at 1250.

Here, Plaintiffs have provided evidence of irreparable harm sufficient to satisfy the standard set forth in *Herb Reed*. In *Life Alert Emergency Response, Inc. v. LifeWatch, Inc.*, the Ninth Circuit upheld a district court's finding of a likelihood of irreparable harm that was based upon "a declaration reporting numerous and consistent complaints" as well as "emails and

social media posts" from consumers who mistakenly thought the defendant's products were associated with the plaintiff. 601 F. App'x 469, 473-74 (9th Cir. 2015).

Here, Plaintiffs have provided evidence strikingly similar in character to that which was found to be sufficient in *Life Alert*. The online comments submitted by Plaintiffs demonstrate that Defendants' products are similar enough in appearance to make consumers believe that they were manufactured by Plaintiffs, yet are appreciably inferior in quality. (May 2, 2015 Amazon.com Customer Review, Ex. 2 to Decl. of Steve Malynn, ECF No. 26) (recounting that a nail polish that had been advertised online as a true Gelish product "ate through" the consumer's nail bed); (Affidavit of Sunil Sirdesai ¶ 3, ECF No. 20) (stating that, counterfeit products, such as those manufactured by Defendants, do not contain certain solvents found in Plaintiffs' genuine products, resulting in "poor performing nail treatments"). Therefore, Plaintiffs have demonstrated that their business reputation has already been harmed by the presence of Defendants' products in the marketplace. This evidence is sufficient to warrant a finding that Plaintiffs will continue to suffer a loss of goodwill in the absence of injunctive relief.

Furthermore, Plaintiffs have sufficiently demonstrated that Defendants' counterfeiting activities threaten the business relationships they have established with their distributors. The Declaration of Steve Malynn, Plaintiffs' chief operating officer, makes clear that confusion in the marketplace arising from counterfeit products "hurt[s] and erode[s] demand for authentic Gelish products" so much that one distributor has threatened to cease its relationship with Plaintiff Harmony "unless it can control and protect its Gelish brand." (Decl. of Steve Malynn ¶ 5, ECF No. 26). Similarly, two of Plaintiffs' other distributors have stated that they "will

consider not renewing their contracts with [Plaintiff Harmony] or will require less favorable terms, if [Plaintiff Harmony] is not able to . . . prevent the distribution of the counterfeit Gelish products." (*Id.* at ¶ 8). The Ninth Circuit has previously found that evidence of a substantial threat to an established business relationship is sufficient to demonstrate a likelihood of irreparable harm in a trademark infringement action. *See OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 602 F. App'x 669, 672 (9th Cir. 2015).

Accordingly, the Court finds that Plaintiffs have satisfied the standard set forth in *Herb Reed*, and have demonstrated that irreparable harm is likely in the absence of a TRO.

### (C) Balance of the Hardships

The evidence in the record reflects the substantial resources that Plaintiffs have invested into fostering business relationships and manufacturing a product that is highly regarded in the marketplace. It is also apparent that Plaintiffs' reputation and status in the marketplace are put at risk by the actions of counterfeiters seeking to unfairly benefit from the positive association consumers have with Plaintiffs' products. As Plaintiffs suffer great hardship from the continuing presence of Defendants' counterfeit goods in the marketplace, and the imposition of a TRO will merely force Defendants to stop misrepresenting the origin of their products, the Court finds that the balance of the hardships tips sharply in Plaintiffs' favor.

### (D) Public Interest

Plaintiffs have demonstrated that a TRO is in the public interest. Plaintiffs have shown that they have spent considerable time, energy, and money to have the public associate its products with their registered marks. By copying Plaintiffs' marks and using marks that are confusingly similar, Defendants are depriving consumers of the ability to distinguish among the

goods of different manufacturers. As the public has a right not to be deceived or confused, the public interest and goals of the Lanham Act favor the issuance of a TRO in this case. *See, e.g.*, *Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1282 (C.D. Cal. 2008).

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Amended Motion for a Temporary Restraining Order, (ECF No. 10), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Amend the Complaint, (ECF No. 27), is **GRANTED**. Plaintiffs shall have until Monday, July 13, 2015, to file an Amended Complaint reflecting that Guangzhou I.C.E. Cosmetic Co, Ltd. has been named as a Defendant in this action.

**IT IS FURTHER ORDERED** that Plaintiffs' Amended Motion to Seal, (ECF No. 15), Amended Motion for an Order to Show Cause Why a Preliminary Injunction Should Not Issue, (ECF No. 11), Amended Motion for Substitute Custodian Order, (ECF No. 12), and Amended Motion for Alternate Service, (ECF No. 14), are **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants, their respective officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendants are hereby temporarily restrained:

    (a)    From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing any of the GELISH marks identified herein or the trade dress associated with GELISH goods, or any confusingly similar mark, other than those actually manufactured or distributed by Plaintiffs;

(b) From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing any of the 18G marks identified herein or the trade dress associated with 18G goods, or any confusingly similar mark, other than those actually manufactured or distributed by Plaintiffs;

(c) From communicating, directly or indirectly, with any person or persons (i) from whom Defendants purchased or obtained products bearing any of the GELISH or 18G marks identified herein; (ii) to whom Defendants sold or offered to sell these products; or (iii) whom Defendants know or reasonably believe to possess, control, or have access to any these products;

(d) From otherwise communicating, directly or indirectly, with any person(s) about this action, or Plaintiffs' Motion for this Order, except for Defendants' attorney or attorneys;

(e) From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiffs, bearing any of the GELISH or 18G marks, or any confusingly similar marks, or trade dress; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing any of the GELISH or 18G Marks, or any confusingly similar marks;

(f) Knowingly instructing, aiding or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs (a) through (e) above.

**IT IS FURTHER ORDERED** that this TRO shall expire 10 days after its issuance unless Plaintiffs show good cause as to why it should be extended or Defendants consent to its extension.

**IT IS FURTHER ORDERED** that pursuant to 15 U.S.C. § 1116(d)(9), the United States Marshals or other Federal or law enforcement officials (such as officers or agents of the United States Customs Service, Secret Service, Federal Bureau of Investigation, or Post Office) or State or local law enforcement officers, together with Plaintiffs' representatives, are hereby authorized to use the reasonable force necessary to carry out the seizure as provided herein and Defendants shall surrender for seizure:

(a) all counterfeit products bearing any of the GELISH or 18G marks, or any other marks substantially indistinguishable from the GELISH or 18G marks; and

(b) all documents, things, and records of any kind relating to the importation, purchase, acquisition, manufacture, insurance of, advertising, promotion, sale, offering for sale, distribution, and transfer of such products, including, but not limited to, computer disks, CD ROMs, computer hardware, and other magnetically or electronically stored information, as provided by 15 U.S.C. § 1116(d)(i)(A).

The United States Marshals or other Federal, State, or local law enforcement officers executing this Order may look for the documents and things to be seized and may appoint any other persons, including Plaintiffs' counsel, investigators and other representatives, to assist in the identification of goods, manufacturing equipment, and relevant records, as well as the execution of this Order.

**IT IS FURTHER ORDERED** that Plaintiffs, through their counsel, investigators and other representatives, are authorized under the supervision and with the assistance of the United States Marshals or other Federal, State, or local law enforcement officers, to take all necessary steps to secure and remove all property and documents identified above which are located at the following address:

>Cosmoprof North America 2015 Trade Show
>
>Mandalay Bay Hotel Convention Center
>
>3950 South Las Vegas Boulevard, Las Vegas, NV 89119

Should Plaintiffs learn of any other warehouse, storage facility, or office where Defendants are manufacturing, warehousing, holding or storing counterfeit nail care preparations bearing any of the GELISH or 18G marks or any confusingly similar marks, Plaintiffs shall notify the Court prior to seizing any goods therein.

**IT IS FURTHER ORDERED** that Plaintiffs and/or their designees may videotape and take photographs and notes of the seizure. However, such videotape and photographs are not to be published to anyone other than the Court, Defendants and their legal representatives, and Plaintiffs and their agents and legal representatives without further order of the Court.

**IT IS FURTHER ORDERED** that only the property listed in this Order shall be seized and impounded, and due care shall be taken by the United States Marshals or other law enforcement officers, their appointed assistants, and Plaintiffs' representatives to preserve and keep in good order Defendants' property and assets which are not related to the manufacture, packaging, importation, sale, or distribution of the alleged counterfeit products referred to above.

**IT IS FURTHER ORDERED** that anyone interfering with the execution of this Order is subject to arrest by the United States Marshals or other Federal, State, or local law enforcement officers executing this Order.

**IT IS FURTHER ORDERED** that the seizure shall take place on or about July 12-14, 2015 at Cosmoprof North America 2015, but not later than ten (10) days after the issuance of this Order occurring in the United States pursuant to 15 U.S.C. § 1116(d)(5)(C).

**IT IS FURTHER ORDERED** that, pursuant to 15 U.S.C. § 1116(d)(10), a hearing shall take place on Monday, July 20, 2015, at 2:00 pm unless Plaintiffs show good cause for another date, or unless Defendants consent to another date. The hearing shall address (1) execution of the seizure of the allegedly counterfeit goods from Defendants; (2) Plaintiffs' requested entry of a preliminary injunction; and (3) the amount of the bond Plaintiffs should be required to post. A description and/or images and/or exemplars of the products seized shall be available to the court, though the entirety of the contents of the seizure need not be brought to the hearing.

**IT IS FURTHER ORDERED** that, if after the seizure of goods outlined above takes place, Defendants obtain additional counterfeit goods as described above, whether by manufacturing, importation, delivery, or otherwise, Defendants shall immediately notify the Court and deliver same into the custody of Plaintiff's counsel or to the United States Marshal to deliver to Plaintiff's counsel.

**IT IS FURTHER ORDERED** that, prior to the execution of the Seizure Order above, per 15 U.S.C. § 1116(d)(5)(D), Plaintiffs shall post a bond in the amount of five thousand dollars ($5,000.00), as payment of damages to which Defendants may be entitled for a

wrongful attempted seizure, and shall file proof of the bond.  Any issue as to the adequacy of the bond must be raised at the hearing on Monday, July 20, 2015.

**IT IS FURTHER ORDERED** that Plaintiffs, through their counsel, investigators and/or representatives, will account completely for all property seized pursuant to this Order and shall compile a written inventory of all such property and shall provide a copy to the United States Marshal, who shall include a copy with his Return to the Court.

**IT IS FURTHER ORDERED** that Plaintiffs' counsel, Wheeler Hudgins Gunn & Dial, LLC, and Feldman Gale, P.A. will act as substitute custodians of any and all property seized pursuant to this Order and shall hold harmless the United States Marshals Service or other Federal, State, or local law enforcement officers executing this Order and their employees from any and all claims asserted in any court or tribunal arising from any acts, incidents, or occurrences in connection with the seizure and possession of any of the Defendants' property, including any third-party claims.  Any and all products seized pursuant to this Order shall be maintained at a secured storage facility or at the office of counsel.  Defendants' counsel shall have supervised access to the stored goods and the seized business records.  Absent any appearance in this case or claim in this case made by Defendants or DOE Defendants, all seized materials may be destroyed after one (1) year from seizure.

**IT IS FURTHER ORDERED** that Plaintiffs may utilize 2-5 bottles of any type of seized nail polish, nail gel, or other liquid or chemical materials for scientific or other testing.

**IT IS FURTHER ORDERED** that Defendants shall file with the Court and serve on counsel for Plaintiffs within five (5) days after the service of this Order, a report in writing and

under oath, setting forth in detail the manner and form in which Defendants have complied with this Order. Specifically, the report shall include a Certification that:

(a) Defendants have identified and surrendered to law enforcement officials and the Substitute Custodian all documents and property subject to seizure as identified above.

(b) Defendants have not discussed the Plaintiffs' Application, this Order or any aspects of the above-captioned case with any persons or entities other than those identified above;

(c) Defendants have not knowingly instructed, aided or abetted any other person or business entity engaging in any of the infringing activities identified above.

**IT IS FURTHER ORDERED,** upon the Complaint herein and Motion for Order to Show Cause Why a Preliminary Injunction Should Not Issue, Defendants are hereby **ORDERED** to show cause before this Court in Courtroom 7D of the United States courthouse located at 333 S. Las Vegas Blvd., Las Vegas, Nevada 89101, on Monday, July 20, 2015, at 2:00 pm, why an order should not issue pursuant to Fed. R. Civ. P. 65(a), granting the injunctive relief in Plaintiffs' Application for Order to Show Cause Why a Preliminary Injunction Should Not Issue.

**IT IS FURTHER ORDERED** that service or delivery of copies of this Order and the papers in support thereof on Defendants or their attorneys at the time of the seizure or within two (2) days after the seizure if there is no party present at the seizure that is authorized to accept service, shall be given and as so given shall be deemed good and sufficient service thereof. All seized business records shall be copied and returned to the Defendants or their counsel within three (3) business days from the date of the seizure ordered herein.

**IT IS FURTHER ORDERED** that opposing papers, if any, shall be filed with the Court and served upon Plaintiffs' counsel no later than Thursday, July 16, 2015.  Plaintiffs shall file any Reply Memorandum on or before Friday, July 17, 2015.  The above dates may be revised upon stipulation by all parties to this action.

**IT IS FURTHER ORDERED** that Defendants are hereby on notice that failure to appear at the show cause hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C.§ 1116(d) and Fed. R. Civ. P. 65, and that failure to appear in this action may result in the eventual destruction of any seized materials.

**IT IS FURTHER ORDERED** that Plaintiffs are hereby granted leave to personally serve representatives of the named foreign defendants attending the 2015 Cosmoprof convention.  Additionally, the Clerk shall issue sequentially numbered summonses naming "DOE Defendant 1," "DOE Defendant 2," etc. up to "DOE Defendant 10."  Plaintiffs are hereby granted leave to personally serve individuals attending the Cosmoprof 2015 convention as a representative of foreign DOE defendants with a DOE Defendant summons, along with copies of the Complaint and this Order.  Pursuant to Fed. R. Civ. P.(c)(3), personal service of representatives of foreign defendants may be effectuated by the Marshal or Deputy Marshals conducting seizures pursuant to the Seizure Order herein.  Upon service of any DOE Defendant, Plaintiffs shall file an Amended Complaint no later than ten (10) days after service naming the DOE Defendants identified at the Cosmoprof 2015 convention.  Plaintiffs are granted leave for alternative service only with respect to foreign defendants having representatives attending, or otherwise present at, the Cosmoprof 2015 convention.  Plaintiffs must serve a domestic DOE Defendant as provided by Fed. R. Civ. P. 4.

**IT IS FURTHER ORDERED** that, pursuant to 15 U.S.C. § 1116(d)(8), the filings in this action, including all Orders and supporting documents, shall be temporarily sealed until Defendants have had an opportunity to contest this Court's Order Granting Plaintiffs' Amended Emergency Ex Parte Motion, except that Defendants shall have access to the instant Order and supporting documents after the seizure has been carried out.

**DATED** this 10th day of July, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Court